## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CAUSE NO.:  1:07-CR-68-TLS |
| | ) | |
| TAUREAN HAYDEN | ) | |

## OPINION AND ORDER

This matter is before the Court on Defendant Taurean Hayden's Motion Under 28 U.S.C.

§ 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [ECF No. 118],

filed on April 11, 2011. The Government filed a Response to the Motion on May 6, 2011 [ECF

No. 120]. On May 19, the Defendant filed a document styled as a Memorandum of Law in

Support [ECF No. 121] purporting to add two additional grounds for habeas relief. On May 20,

the Defendant filed a Motion to Present Sworn Affidavit [ECF No. 122]. The Court granted that

Motion on May 24 and entered into the record the Defendant's Sworn Affidavit [ECF No. 124],

also discussing additional grounds for relief. The Government filed a Response Regarding

Defendant's Affidavit [ECF No. 125] on May 26.


## BACKGROUND

On March 15, 2007, the Government filed a Complaint [ECF No. 1] against  the

Defendant, Taurean L. Hayden. Count One charged the Defendant with knowingly and

intentionally possessing with the intent to distribute 500 grams or more of cocaine, in violation

of 21 U.S.C. § 841(a)(1). Count Two charged the Defendant with carrying a firearm during and

in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c).

Attorneys Patrick J. Arata and Albert Anzini represented the Defendant during the

beginning of the trial process.  Attorney Anzini appeared for the Defendant at the Detention Hearing and Preliminary Examination on July 20, 2007, and attorney Arata appeared for the Defendant at the Arraignment on August 1. Attorney Stanley L. Campbell entered an appearance on August 27, and attorneys Arata and Anzini withdrew from representation on September 7.

Attorney Campbell filed a Motion to Suppress Evidence [ECF No. 39] on October 26, 2007, and the Court conducted an evidentiary hearing concerning the Motion on December 13 [ECF No. 45]. After briefing by the parties, the Court issued an Opinion and Order [ECF No. 58] dated July 16, 2008, denying the Defendant's Motion to Suppress Evidence. Then on September 17, 2008, the parties entered a Plea Agreement [ECF No. 63].

In the Plea Agreement, the Defendant agreed to enter a plea of guilty to both Counts 1 and 2 of the Indictment. In paragraph 6, he reserved his right to appeal as follows:

> *I specifically preserve my right to challenge on appeal*: (1) the issues presented in the Conclusions of Law, Section C, Search of the Grand Prix, in the Opinion and Order dated July 16, 2008, which denied my motion to suppress; and (2) the drug quantity determination at sentencing. I understand that item number (1) above does *not* preserve my right to challenge on appeal the remaining issues presented by my motion to suppress, meaning that I may *not* challenge on appeal the issues presented in the Conclusions of Law, Section A, Affidavit in Support of Salt Trail Canyon Pass Search Warrant, and Section B, Search of the Dodge Charger.

(Plea Agreement ¶ 6, ECF No. 63.)

Moreover, in the Plea Agreement, the Defendant stated that he understood the rights he was waiving by pleading guilty. He also confirmed his understanding that the Court, using the applicable United States Sentencing Guidelines, would determine an appropriate sentence. The Plea Agreement set forth the possible penalties for the two Counts, including a sentence of ten years to life for Count 1 and five years to life for Count 2. (*Id.* ¶ 8.b.)  The Defendant stated his belief that attorney Campbell had "done all that anyone could do to counsel and assist" him. (*Id.*

¶ 11.) He declared that he was offering his "plea of guilty freely and voluntarily and of [his] own accord," that "no promises ha[d] been made to [him] other than those contained in" the Plea Agreement, and that he had not been "threatened in any way by anyone to cause [him] to plead guilty in accordance with" the Plea Agreement. (*Id.* ¶ 12.) With respect to his appellate rights, the Defendant stated:

> I understand that the law gives a convicted person the right to appeal the conviction and the sentence imposed, I also understand that no one can predict the precise sentence that will be imposed, and that the Court has jurisdiction and authority to impose any sentence within the statutory maximum set for my offense(s) as set forth in this plea agreement; with this understanding and in consideration of the government's entry into this plea agreement, I expressly waive my right to appeal (*except as provided in paragraph 6 of this Plea Agreement*) or to contest my conviction and my sentence and any restitution order imposed or the manner in which my conviction or my sentence or the restitution order was determined or imposed, to any Court on any ground, including any claim of ineffective assistance of counsel unless the claimed ineffective assistance of counsel relates directly to this waiver or its negotiation, including any appeal under Title 18, United States Code, Section 3742 or any post-conviction proceeding, including but not limited to, a proceeding under Title 28, United States Code, Section 2255.

(*Id.* ¶ 8.e.)

At the September 24, 2008, change of plea hearing, the Defendant pled guilty to Counts One and Two of the Indictment in accordance with his Plea Agreement. The Defendant took an oath and the Court confirmed that the Defendant was fully competent and capable of entering an informed plea, that the Defendant was aware of the charges against him and the consequences of his plea, and that his plea of guilty was a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense. (Plea Hr'g Tr. 32, ECF No. 112.) The Defendant stated that he was satisfied with attorney Campbell's representation and advice, that he had an opportunity to read and discuss his Plea Agreement with his lawyer before signing it, that he understood its terms and there was nothing in the Plea

Agreement he did not understand, that he had not been threatened or coerced in any way to sign

the Plea Agreement, that no one had made any promises or assurances of any kind to get him to

plead guilty, and that he understood the Government would be recommending he receive a

sentence equal to the minimum of the applicable Guidelines range. (Plea Hr'g Tr. 7–8.) He also

acknowledged that the Court could reject the recommendation without letting him withdraw his

plea. The Court noted that the Government had filed the notice required under 21 U.S.C.

§ 851(a)(1), and that the penalty the Defendant faced on Count 1 was therefore not less than ten

years and not more than life, and that the penalty he faced on Count 2 was not less than five

years and not more than life. (*Id.* 13–14.) The Defendant also stated his understanding that the

Court could impose a sentence more severe than he might anticipate. (*Id.* 8.) He stated that he

understood he was agreeing to waive his right to appeal his conviction or sentence and the

manner in which they were imposed, that he understood he would be  prohibited from

collaterally attacking his conviction or sentence or the manner in which they were imposed

through a habeas corpus petition, and that he was giving up his right to claim the ineffective

assistance of legal counsel unless the claimed ineffectiveness related directly to the appellate

waiver or its negotiation. However, as noted in his Plea Agreement, the Defendant did reserve

his right to appeal the search of the black Pontiac Grand Prix, and the determination of drug

quantity for sentencing purposes. At one point in the discussion, attorney Campbell stated that

the Defendant was "saying there may be a contention over drug quantity determination." (*Id.* 9.)

The Defendant confirmed that he was preserving his right to appeal "the Court's determination

with regard to the search of the Grand Prix and the drug amount." (*Id.* 10.)

The Defendant stated, further, that he had talked to his attorney about how the advisory

Guidelines might apply to his case, that the Court would not be able to determine the advisory

Guidelines sentence until after receiving the presentence report, that the sentence ultimately

imposed on him might be different from any estimate his attorney had given him, and that the

Court's ultimate sentence might be greater than or less than the advisory Guidelines sentence.

Assistant United States Attorney Anthony Geller, for the Government, summarized the

evidence at the change of plea hearing. Notably, he listed as evidence against the Defendant a

kilogram of cocaine found near Deshawn Burnett and the cash found in the Defendant's

residence, and stated that "the conversion of that cash into cocaine and drugs is really potentially

our sentencing issue there." (Plea Hr'g Tr. 29:9–10.) The Defendant stated that he heard all that

attorney Geller had to say about the Government's evidence against him, and that he agreed that

two kilograms of cocaine were contained in his black Pontiac Grand Prix at the time of his arrest.

The Court then accepted the Defendant's guilty plea on both Counts 1 and 2. At the conclusion

of the hearing, attorneys Campbell and Geller advised that an evidentiary hearing would be

necessary to determine how and whether the cash found would be converted to cocaine, and

whether the Court would find the Defendant responsible for the additional kilogram of cocaine

obtained from Burnett. (Plea Hr'g Tr. 34.)

The Court held an evidentiary hearing on February 9, 2009, concerning sentencing

issues. The Court then issued an order on July 27, 2009, overruling the Defendant's objections

regarding the kilogram of cocaine found near Burnett and the cash found in the Salt Trail

Canyon Pass residence and concluding that the Government was correct in converting the

quantity of cocaine and cash to a marijuana equivalent of 3,758.83 kilograms. (Sentencing Mem.

29, ECF No. 88.) On July 27, 2009, the Court sentenced the Defendant to 188 months

imprisonment on Count 1 and 60 months imprisonment on Count 2 to run consecutively with Count 1. When the Court asked the Defendant if he agreed with everything attorney Campbell had said on his behalf, the Defendant stated that he did. (Sentencing Hr'g Tr. 8, ECF No. 113.)

The Defendant filed a Notice of Appeal [ECF No. 94] on August 5, 2009. In an unpublished opinion, the Seventh Circuit discussed the Defendant's appeal and attorney Campbell's *Anders* brief, considering whether attorney Campbell could challenge the "voluntariness of [the Defendant's] guilty plea or the adequacy of the plea colloquy." *United States v. Hayden*, 389 F. App'x 544, 547 (7th Cir. 2010). The Circuit determined that this Court's failure to advise the Defendant on the Court's authority to order restitution was harmless, and that his right to present evidence at trial was covered in his written Plea Agreement. Therefore, the Seventh Circuit found that "[a]ny challenge to the plea colloquy on this basis would . . . be frivolous." *Id.* at 547–48. Next, the Seventh Circuit held that the Court "correctly recited the law of this circuit," dismissing the Defendant's claim that he was not subject to the consecutive five-year minimum sentence for possession of a firearm in furtherance of a drug trafficking crime. *Id.* at 548. The Seventh Circuit also held that any challenge that the Defendant could have made to the stop and search of the Pontiac Grand Prix would have been futile. *Id.* The Circuit reasoned that the traffic stop was supported "not only by Hayden's presence at a known drug house and evasive driving . . . but also by Hayden's multiple traffic violations." *Id.* The Seventh Circuit held that the Defendant's consent to the search of the Pontiac Grand Prix was voluntarily given and that the officers had probable cause to search the entire car due to the odor of marijuana from the start. *Id.* at 549. The Circuit also rejected the Defendant's challenge to this Court's determination of relevant drug quantity as frivolous,

reasoning that the kilogram retrieved from Burnett was (1) packaged similarly to the cocaine found in the black Grand Prix, (2) discovered immediately after Burnett briefly entered and exited the Defendant's vehicle and known drug house, and (3) was reasonably viewed as part of the same course of conduct. *Id*. The Seventh Circuit stated as follows concerning the money and drugs found in the Defendant's house: "the [district] court's findings that the drugs and money were Hayden's and that he had earned the money through drug trafficking were well supported by the evidence." *Id.* Alluding to a potential challenge to the Defendant's consecutive five-year sentence under § 924(c)(1)(A), the Circuit held that attorney Campbell correctly concluded that any such argument was precluded by the appeal waiver signed by the Defendant. *Id*. Lastly, the Defendant claimed attorney Campbell provided ineffective assistance of counsel for incorrectly interpreting the mandatory minimum sentence in negotiation of the Plea Agreement and at sentencing. However, the Circuit held that the Defendant's appeal waiver "bars all claims of ineffective assistance except for those relating directly to the waiver or its negotiation." *Id*. The Circuit reasoned that although the Defendant's ineffective assistance claims might fall under this exception, the court would decline to address them on appeal because they would be better suited to a collateral action under 28 U.S.C. § 2255. *Id*. Finding that any appellate argument by attorney Campbell would be frivolous, the Seventh Circuit granted attorney Campbell's motion to withdraw and dismissed the appeal. *Id*.

The Defendant now seeks to vacate, set aside, or correct his sentence on the basis of an involuntarily and unknowingly signed plea agreement and ineffective assistance of counsel. The Government, in its Response [ECF No. 120], argues that the Defendant's claims provide no basis for collateral relief because they have been waived. The Defendant replied by filing a

Memorandum of Law in Support [ECF No. 121] asserting additional grounds for habeas relief, and a Motion to Present a Sworn Affidavit [ECF No. 122], which the Court granted [ECF No. 123]. The Clerk docketed the Defendant's Sworn Affidavit [ECF No. 124] on May 24, 2011. In his Sworn Affidavit, the Defendant states that attorney Campbell advised him that if he did not stipulate to involvement with drugs or money besides the drugs in his car, he could only be sentenced for the cocaine found in his car. The Government filed a Response [ECF No. 125], continuing to argue that the Defendant's claims present no basis for relief and requesting that the Court deny the Defendant's motion without a hearing. The Court agrees with the Government that the Defendant's claims do not entitle him to collateral relief.

## ANALYSIS

Section 2255 allows a person convicted of a federal crime to vacate, set aside, or correct his sentence. This limits relief to "'an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice.'" *Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1991) (quoting *Carreon v. United States*, 578 F.2d 176, 179 (7th Cir. 1978) (additional quotation marks omitted)). Relief under a motion to vacate a conviction or correct a sentence is "reserved for extraordinary situations," *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996), and § 2255 relief is "an extraordinary remedy to one who already has had an opportunity for full process," *Kafo v. United States*, 467 F.3d 1063, 1068 (7th Cir. 2006) (citing *Prewitt*, 83 F.3d at 816).

The Defendant contends that he is entitled to habeas relief on seven grounds:[1] In ground one, he asserts that he did not knowingly or voluntarily enter into his guilty plea because his attorney erroneously advised him that he would only be held responsible for the two kilograms of cocaine found in his car, and did not advise him about relevant conduct under the Guidelines. In ground two, he maintains that attorney Campbell was ineffective because he did not advise the Defendant that other substances and money could increase his offense level because they could constitute relevant conduct under the Guidelines. In ground three, the Defendant claims his counsel was ineffective at sentencing for failing to object when this Court sentenced him based in part on relevant conduct. In ground four, he maintains that his counsel was ineffective for failing to appeal his sentence, arguing that his appellate waiver is invalid because it stems from ineffective assistance of counsel.

In the first additional ground raised in his Memorandum of Law in Support, the Defendant alleges attorney Campbell was ineffective because he misinformed the Defendant about his mandatory minimum sentence. In the second additional ground raised in his Memorandum of Law in Support, the Defendant argues his counsel was ineffective for failing to properly investigate his prior criminal history and misadvising the Defendant about whether his state felony offenses could be used to increase his penalty under federal law. Finally, in his Sworn Affidavit, the Defendant restates his claim concerning his mandatory minimum sentence (discussed in his first additional ground in the Memorandum of Law in Support). The Defendant also raises one more ground for relief in his Sworn Affidavit, arguing that attorney Campbell

---

[1]The Defendant only asserts four grounds for relief in his § 2255 Motion [ECF No. 118], but he articulates two additional bases in his Memorandum of Law in Support [ECF No. 121], and one additional basis in his Sworn Affidavit [ECF No. 124].

advised him that, if he did not stipulate to additional misconduct, he could only be sentenced based on the drugs found in his car.

The Government argues in its Response concerning the Defendant's initial § 2255 Motion that the Defendant "has waived all of these challenges because he has waived his right to present these issues in a motion pursuant to 28 U.S.C. § 2255." (Gov't Resp. 1, ECF No. 120.) Although the Defendant preserved his right to appeal the search of the black Pontiac Grand Prix and the drug quantity determination on sentencing, the Government also notes that none of the issues raised in the Defendant's § 2255 Motion involve either issue he had reserved to challenge on appeal.

The Government argues in its Response to the Sworn Affidavit that the grounds raised in the Defendant's Sworn Affidavit are also waived by the plain language of the Plea Agreement's waiver. Further, the Government notes that it did file the appropriate information pursuant to 21 U.S.C. § 851, and argues that the Defendant's suggestion that he was ignorant of the possibility he would be sentenced based on additional drug quantities is in direct conflict "with his sworn testimony at the guilty plea hearing." (Gov't Resp. to Aff. 2, ECF No. 125.) The Government also addresses the Defendant's claim concerning what constitutes a felony drug offense under federal law, raised in his Memorandum of Law in Support, arguing that the Court appropriately enhanced the Defendant's sentence. (*Id.* 5.)

## A.     Legal Standard

### 1.     *Plea Waivers*

A plea agreement is a type of contract subject to contract law principles tempered by

limits that the Constitution places on the criminal process. *See United States v. Bownes*, 405 F.3d 634, 636 (7th Cir. 2005). Waivers, including those that waive the right to collaterally attack a conviction or sentence, are enforceable as a general rule. *Jones v. United States*, 167 F.3d 1142, 1145 (7th Cir. 1999). "A defendant may validly waive both his right to a direct appeal and his right to collateral review under § 2255 as part of his plea agreement." *Keller v. United States*, 657 F.3d 675, 681 (7th Cir. 2011) (citing *Jones*, 167 F.3d at 1144). Courts "enforce a plea agreement's appellate waiver if its terms are clear and unambiguous and the record shows that the defendant knowingly and voluntarily entered into the agreement." *United States v. Linder*, 530 F.3d 556, 561 (7th Cir. 2008). The Seventh Circuit has "generally upheld and enforced these waivers, with limited exceptions for cases in which the plea agreement was involuntary, the district court 'relied on a constitutionally impermissible factor (such as race),' the 'sentence exceeded the statutory maximum,' or the defendant claims 'ineffective assistance of counsel in connection with the negotiation of [the plea] agreement.'" *Keller*, 657 F.3d at 681 (quoting *Jones*, 167 F.3d at 1144–45).

## 2.     *Ineffective Assistance of Counsel Claims*

Claims of ineffective assistance of counsel are controlled by the two-pronged test set forth in *Strickland v. Washington*, 46 U.S. 668 (1984). To establish and succeed on an ineffective assistance of counsel claim, a petitioner must demonstrate that the specific acts or omissions of his attorney "fell below an objective standard of reasonableness" and that these acts or omissions were "outside the wide range of professionally competent assistance." *Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993) (quoting *Strickland*, 466 U.S. at 688, 690); *see also Hardamon v.*

*United States*, 319 F.3d 943, 948 (7th Cir. 2003); *Anderson v. Sternes*, 243 F.3d 1049, 1057 (7th Cir. 2001). The *Strickland* test also requires that a petitioner show prejudice, which is demonstrated by a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "To demonstrate prejudice arising from a guilty plea allegedly rendered involuntary by counsel's deficient performance, a petitioner must establish that counsel's performance was objectively unreasonable and that, but for counsel's erroneous advice, he would not have pleaded guilty." *Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir. 2000) (citing *United States v. Martinez*, 169 F.3d 1049, 1052–53 (7th Cir. 1999)).  If the Court finds either the performance or the prejudice component of the ineffective assistance claim deficient under the *Strickland* test, then there is no need to consider the sufficiency of the other component. *United States v. Slaughter*, 900 F.2d 1119, 1124 (7th Cir. 1990). The court "presume[s] that the lawyer is competent to provide the guiding hand that the defendant needs, [and so] the burden rests on the accused to demonstrate a constitutional violation." *United States v. Cronic*, 466 U.S. 648, 658 (1984) (citing *Michel v. Louisiana*, 350 U.S. 91, 100–101 (1955)).

"Failure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel." *Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996).


**B.**     **Claims that Do Not Involve an Involuntary Waiver or Negotiation of the Plea**

In the Seventh Circuit, the only claims that survive a proper waiver of the right to appeal or collaterally challenge a sentence are claims that the waiver was involuntary, that the trial court relied on a constitutionally impermissible factor (such as race), that the sentence exceeded the

statutory maximum, or claims of ineffective assistance of counsel in the negotiation of the

waiver. *Jones*, 167 F.3d at 1144–45. It is undisputed that the Defendant entered into a Plea

Agreement which waived his right to appeal or collaterally challenge his sentence, except for his

right to appeal the Court's findings relating to the search of his black Pontiac Grand Prix and the

Court's determination of the total drug quantity on sentencing. The Defendant has not suggested

that the trial court relied on race or any other constitutionally impermissible factor, or sentenced

him in excess of the statutory maximum. The Court, therefore, begins with an analysis of the

grounds for relief raised by the Defendant which do not involve either category of claims still

available to him under *Jones*.

1.     *Claimed Ineffective Assistance for Failing to Object*

Ground three of the Defendant's § 2255 Motion does not involve an involuntary waiver

or plea agreement negotiations. In ground three, the Defendant argues attorney Campbell

provided ineffective assistance of counsel at sentencing by failing to object to this Court's

violation of U.S.S.G. § 1B1.2. The Defendant also argues that attorney Campbell "failed to

object to the district court's use of amounts of a 'mixture and substance' not charged in the

indictment, nor proven by the government at sentencing, to increase the petitioner's sentence in

violation of due process." (§ 2255 Mot., ECF No. 118 at 7.)  The Government responds that the

Defendant waived his right to bring this claim in a § 2255 petition. The Government responds,

further, that the Defendant's claim that attorney Campbell "failed to object on the drug quantity

issue is obviously not true given the record." (Gov't's Resp. 13, ECF No. 120.)

The Court agrees with the Government that the Defendant has waived his right to bring

this claim. The Defendant's arguments relating to his attorney's failure to object on sentencing do not suggest that his decision to plead guilty was involuntary, nor do they relate to the negotiation of his plea agreement. As discussed above, it appears from the plea colloquy that the Defendant made a knowing, voluntary waiver of his right to bring most claims in a § 2255 petition. The Government is correct that the Defendant waived his right to bring this claim.

Further, even were the Court to consider this claim on its merits, it would fail. As the Government correctly notes, attorney Campbell made significant objections relating to the drug quantity issue for sentencing purposes. He clarified the issue at the change of plea hearing, zealously advocated on the Defendant's behalf concerning the issue at the February 9, 2009, evidentiary hearing, filed a Sentencing Memorandum [ECF No. 80] raising multiple arguments on the issue, and even discussed the issue on direct appeal. The Defendant is simply mistaken in his belief that attorney Campbell failed to object on this point. The Defendant is also mistaken in asserting that the Court sentenced him based on a combined drug quantity not "proven by the government at sentencing." (§ 2255 Mot., ECF No. 118 at 7.) On the contrary, the Court held in its order of July 27, 2009, that the combined drug quantity reflected in the Presentence Investigation Report (PSR) correctly stated the Defendant's offense conduct for sentencing purposes. (Sentencing Mem. 29, ECF No. 88.) Finally, the Defendant is mistaken in his belief that U.S.S.G. § 1B1.2 would have affected his ultimate sentence. He appears to believe that because his Plea Agreement did not contain "a stipulation that specifically establishes a more serious offense than the offense of conviction," U.S.S.G. § 1B1.2(a), he should not be sentenced based on relevant conduct. Paragraph (b), however, states: "After determining the appropriate offense guideline section pursuant to subsection (a) of this section, determine the applicable

14

guideline range in accordance with § 1B1.3 (Relevant Conduct)." U.S.S.G. § 1B1.2(b). Accordingly, consideration of the Defendant's relevant conduct was appropriate, and attorney Campbell was not ineffective for failing to object to it under § 1B1.2(a). Indeed, the Defendant has failed to show that attorney Campbell's assistance was objectively unreasonable regarding any of the Defendant's allegations in ground three, and he has also failed to show that he was prejudiced by any of these alleged failures.

Because the Defendant has waived his third ground for habeas relief, and because it would fail on its merits, the Court will deny the claims contained in ground three.

### 2.      *Claimed Ineffective Assistance for Failing to Appeal*

In ground four of his § 2255 Motion, the Defendant claims that attorney Campbell provided ineffective assistance of counsel on appeal by filing an *Anders* brief instead of an appeal on the Defendant's behalf. The Defendant also argues that attorney Campbell was wrong to rely on his appellate waiver as the appellate waiver resulted from ineffective assistance of counsel. The Government responds that the Defendant waived his right to bring this claim, and that the claim fails on its merits.

The Court agrees with the Government that the Defendant has waived his right to collaterally raise this ineffective assistance claim. His argument that attorney Campbell's filing of an *Anders* brief deprived him of effective assistance of counsel on appeal does not suggest that his decision to plead guilty was involuntary, nor does it relate to the negotiation of his Plea Agreement. Accordingly, the Defendant knowingly and voluntarily waived his right to bring this claim.

As above, even if the Defendant had not waived this claim, it would fail on its merits. "The framework for assessing the constitutional effectiveness of appellate counsel is the same two-pronged *Strickland* test as for effectiveness of trial counsel." *Warren v. Baenen*, 712 F.3d 1090, 1105 (7th Cir. 2013) (citing *Smith v. Robbins*, 528 U.S. 259, 285 (2000) and *Howard v. Gramley*, 225 F.3d 784, 789–90 (7th Cir. 2000)). The Defendant has failed to show that attorney Campbell's decision to file an *Anders* brief was objectively unreasonable. In *Anders v. California*, the United States Supreme Court stated:

> If counsel is convinced, after conscientious investigation, that the appeal is frivolous, of course, he may ask to withdraw on that account. If the court is satisfied that counsel has diligently investigated the possible grounds of appeal, and agrees with counsel's evaluation of the case, then leave to withdraw may be allowed and leave to appeal may be denied.

*Anders v. California*, 386 U.S. 738, 741–42 (1967) (quoting *Ellis v. United States*, 356 U.S. 674, 675 (1958)). The Seventh Circuit found attorney Campbell's treatment of the appellate issues to be correct, and granted his motion for leave to withdraw. Moreover, the Seventh Circuit agreed with attorney Campbell that any appeal on behalf of the Defendant would have been frivolous. *See Hayden*, 389 F. App'x at 549. Therefore, the record indicates that attorney Campbell's representation on appeal was reasonable, and that the Defendant was not prejudiced by his treatment of the appellate issues in an *Anders* brief.

Accordingly, because it is properly waived and because it would fail on its merits, the Court will deny habeas relief as to ground four of the Defendant's § 2255 Motion.

## C.     Claims that Arguably Do Involve an Involuntary Waiver or Negotiation of the Plea

The Defendant raises five additional claims that survive the waiver provision in the Plea

16

Agreement because they allege that attorney Campbell was ineffective in the negotiation of the Plea Agreement. The Court will address these remaining claims in turn.

**1.        *Claim that the Defendant Involuntarily Entered Into the Plea Agreement***

In ground one of his § 2255 Motion, the Defendant states that he did not knowingly and voluntarily enter into his Plea Agreement because attorney Campbell did not advise him that he could be held responsible for relevant conduct under the Sentencing Guidelines. Therefore, he argues, his plea of guilty was not knowing and voluntary because he believed at the time he pled that he would only be responsible for the two kilograms of cocaine in his car, when in fact the Court sentenced him based also on the substantial amount of drug money and some drugs in his residence, and Burnett's kilogram of cocaine. The Government responds, first, that the Defendant has waived this claim in his Plea Agreement. The Court disagrees because, as discussed below, the Court finds that the Defendant's ground one claim is, in essence, a claim of ineffective assistance of counsel in the negotiation of the plea.

The Defendant states, broadly, that because of his attorney's incorrect advice he did not "knowingly and voluntarily" enter into his Plea Agreement. But the Court finds that the substance of his claim is in fact an attack on whether his plea was knowing, not on whether it was voluntary. He claims that he did not know what he was doing when he pled guilty, and that the reason he lacked knowledge was his attorney's ineffective assistance. His ground one claim is not a claim that he entered his plea involuntarily, i.e. that he was coerced into pleading guilty. *See Jones*, 167 F.3d at 1145 (describing an involuntary waiver as the situation "where a waiver is not the product of the defendant's free will—for example, where it has been procured by

17

government coercion or intimidation"). The Defendant's ground one claim includes no allegations of coercion or intimidation. The Court finds that the substance of the Defendant's ground one claim is that his attorney provided ineffective assistance of counsel, not that the Government coerced him into pleading guilty. The Court will address the merits of the Defendant's ground one claim as part of its analysis of his ground two ineffective assistance claim.

Further, even were the Court to consider the Defendant's ground one claim as a challenge to the voluntariness of his plea, the Court would find—based on the Court's thorough plea colloquy and the statements the Defendant made at the colloquy—that the Defendant made a knowing, voluntary decision to plead guilty and to waive his right to bring most appeals or collateral actions. *See United States v. Schuh*, 289 F.3d 968, 975 (7th Cir. 2002) (stating that "a careful plea colloquy under Rule 11 ensures that the guilty plea is knowing and voluntary"); *United States v. Jemison*, 237 F.3d 911, 917 (7th Cir. 2001) (stating that a defendant's testimony at a plea colloquy "clearly illustrate[d]" that she knowingly and voluntarily entered into her plea agreement and its waiver terms).

For all of these reasons, the Court will deny habeas relief as to the claim in ground one of the Defendant's § 2255 Motion.

**2.      *Claim that Attorney Campbell Failed to Advise About Relevant Conduct***

In ground two of his § 2255 Motion, the Defendant alleges that attorney Campbell was ineffective because he did not advise the Defendant that "'relevant conduct' could be used to increase [the Defendant's] base offense level under the U.S. Sentencing Guidelines—or how [the

18

Defendant] could receive an increased base offense level for money and property not mentioned in the count of conviction." (§ 2255 Mot., ECF No. 118 at 5.) The Defendant states that had he "been aware of these facts he would not have pled." (*Id.*) The Government argues, first, that the Defendant waived his right to bring this claim as part of a § 2255 petition by signing the Plea Agreement, which included a waiver provision. The Court disagrees with the Government on this point. The Defendant is raising a claim of ineffective assistance of counsel relating to his decision to sign the Plea Agreement. If he had refused to sign the Plea Agreement, he would not have waived his right to bring § 2255 claims. Thus, the Court will analyze this claim as a claim of ineffectiveness relating to the negotiation of the plea, a claim still available to the Defendant under *Jones*.

The Government also responds to the Defendant's ground two claim on its merits. Noting the many instances at the change of plea hearing in which the parties discussed the issue of drug quantity for sentencing purposes, the Government argues that "the focus on the drug quantity issue at the guilty plea hearing simply does not support [the Defendant's] statement to the contrary in his motion." (Gov't's Resp. 13, ECF No. 120.) The Court agrees.

"To make out a claim for ineffective assistance of counsel in the context of a guilty plea, a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's errors, the defendant would not have pled guilty and would have insisted on going to trial." *Bethel v. United States*, 458 F.3d 711, 716–17 (7th Cir. 2006) (citing *Hill v. Lockhart*, 474 U.S. 52, 57–59 (1985)).

The Defendant's ground two claim fails, first, because the record shows that the

Defendant knew at the time he pled guilty that the computation of a total drug quantity was an issue for sentencing. In his Plea Agreement, he specifically reserved his right to challenge on appeal "the drug quantity determination at sentencing." (Plea Agreement ¶ 6.) Further, at his change of plea hearing, he stated that he understood the terms of the Plea Agreement and that there was nothing in it that he did not understand. When the Court addressed his waiver, he specifically interjected that he had a right to appeal the two issues preserved in the Plea Agreement, including the "drug quantity determination" (Plea Hr'g Tr. 9, ECF No. 112), and confirmed that he wanted to appeal "the drug amount" (*Id.* 10). He reiterated that he understood what it meant for him to reserve his right for the Court of Appeals to review "the drug quantity determination at sentencing." (*Id.* 11.) Also at his change of plea hearing, attorney Geller summarized the evidence against the Defendant and described the kilogram of cocaine found near Burnett, along with the significant amount of cash found in one of the Defendant's residences. Attorney Geller specifically stated that "[t]he conversion of that cash to cocaine and drugs is really potentially our sentencing issue there." (*Id.* 29.) The Defendant stated that he heard everything attorney Geller had stated concerning the Government's evidence. The Court then asked him if he agreed with the Government's summary, but attorney Campbell interjected on the Defendant's behalf, stating a truncated summary of the facts "in order to preserve . . . issues of appeal." (*Id.* 30–31.) The Defendant agreed with what attorney Campbell said on his behalf. After all of the preceding discussion, the Court accepted the Defendant's plea of guilty to Counts 1 and 2. At the end of the hearing, attorneys Geller and Campbell discussed "whether and how the cash is converted to cocaine" (*id.* 34), and advised the Court that an evidentiary hearing would be necessary on this issue.

The Defendant's claim that attorney Campbell failed to advise him about relevant conduct is not stated in his Sworn Affidavit, although he alludes to it as part of his discussion of U.S.S.G. § 1B1.2. Any indirect reference to the Defendant's ground two claim in his Sworn Affidavit, however, does not meet the threshold requirement for a hearing, and the Court will therefore not set this matter for an evidentiary hearing.[2] *See Galbraith v. United States*, 313 F.3d 1001, 1009 (7th Cir. 2002) ("[I]n order for a hearing to be granted, the petition must be accompanied by a detailed and specific affidavit which shows that the petitioner had actual proof of the allegations going beyond mere unsupported assertions." (quotation marks omitted)). Further, as outlined above, the Defendant affirmed in at least six different instances in his Plea Agreement and at his change of plea hearing that he understood he was preserving his right to appeal the Court's determination of drug quantity for purposes of sentencing. "Judges need not let litigants contradict themselves so readily; a motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand unless the defendant has a compelling explanation for the contradiction." *United States v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005).

It is clear from the record before the Court that the Defendant understood that the computation of his total drug quantity for sentencing purposes was the primary issue for sentencing. The parties addressed this issue at an evidentiary hearing, and through sentencing briefing. The Court addressed this issue in a thirty-page order. The Defendant now wishes to contradict his multiple sworn statements concerning the drug quantity issue . His claim that his

---

[2]The Defendant does specifically address his ineffective assistance of counsel claim relating to U.S.S.G. § 1B1.2 in his Sworn Affidavit. The Court will consider that related claim below.

attorney did not advise him about relevant conduct could only be true if he was lying when he said he understood he was preserving his right to appeal the "drug quantity determination." Because it appears attorney Campbell's representation on the drug quantity issue at sentencing was reasonable under the first prong of *Strickland*, and because the Defendant presents no compelling explanation for his contradiction, this claim "may be rejected out of hand." *Peterson*, 414 F. 3d at 827.

The Defendant's claim fails the first prong of *Strickland* for another reason. In the context of a guilty plea, an "alleged miscalculation" by counsel, "standing alone, could never suffice to demonstrate deficient performance unless the inaccurate advice resulted from the attorney's failure to undertake a good-faith analysis of all of the relevant facts and applicable legal principles." *Bridgeman*, 229 F.3d at 592. Because the Defendant has "failed to allege facts demonstrating that his counsel's prediction was not undertaken in good faith," *id.*, his ground two claim of ineffective assistance of counsel fails to meet the first prong of *Strickland*.

Furthermore, the Defendant's statements also foreclose any finding of prejudice under the second prong of *Strickland*. The Defendant is now arguing that if he had understood about how relevant conduct could affect his sentence under the Guidelines, he would not have pled guilty. But in multiple instances in his Plea Agreement and at the change of plea hearing, the Defendant stated that he was pleading guilty with the understanding that his sentence might not be what he expected. Specifically, in paragraph 7 of the Plea Agreement, he stated his understanding that the Guidelines were only advisory, and that the Court would determine his specific sentence after considering the Presentence Investigation Report (PSR). He also stated: "I . . . understand that no one can predict the precise sentence that will be imposed, and that the

22

Court has jurisdiction and authority to impose any sentence within the statutory maximum set for my offense(s)." (Plea Agreement ¶ 8.e., ECF No. 63.) Moreover, at the change of plea hearing, he stated his understanding that the Court could impose on him a sentence more severe than he might anticipate. He also affirmed his understanding that the Court would determine his sentence based on many factors, that he had talked to his attorney about how the Guidelines might affect his case, that the Court would not determine his sentence until after considering the PSR, that his ultimate sentence might be different from any estimate given to him by attorney Campbell, and that the Court's consideration of all factors might "result in the imposition of a sentence that is either greater or less than the advisory guideline sentence." (Plea Hr'g Tr. 16, ECF No. 112.)

In *Bethel v. United States*, the Seventh Circuit considered a defendant's claim that he was prejudiced by his attorney's failure to properly advise him about his career offender status, and that he would have rejected the plea agreement and gone to trial if he had been properly advised. The district court in *Bethel* did not conduct an evidentiary hearing, so the Seventh Circuit did not evaluate whether counsel's performance violated the first prong of *Strickland*. *Bethel*, 458 F.3d at 718. The *Bethel* court found, however, that the defendant could not establish prejudice under the second prong of *Strickland* because he had specifically stated that his plea of guilty was not based on a belief that he would receive any specific sentence. Noting that the district court told the defendant "in six or seven different ways that his sentence could be more severe than he expected and greater than his attorney predicted," *id.* at 719–20, the court found no prejudice to the defendant from any error by his lawyer because the defendant himself "assured all concerned that he wished to plead guilty no matter what the sentencing consequences of that plea turned out to be," *id.* at 720. *See also United States v. Rice*, 116 F.3d 267, 269 (7th Cir. 1997) (finding no

prejudice from any bad advice given by an attorney where the judge told the defendant "point blank that he could not harbor any particular expectations about the sentence"); *Bridgeman*, 229 F.3d at 592 (finding defendant's guilty plea not unknowing or involuntary where the court made the defendant "aware of the consequences of his guilty plea despite counsel's alleged prediction").

As in *Bethel*, the Defendant assured the Court that he was pleading guilty with an understanding that his sentence might be more severe than he expected. He assured the Court that he understood he could not rely on his attorney's prediction about a sentence, and that the Court would determine the proper sentence after consideration of many factors, including the completed PSR. He assured the Court "that he wished to plead guilty no matter what the sentencing consequences of" his plea. *Bethel*, 458 F.3d at 720. Accordingly, even if the Defendant could establish that attorney Campbell rendered ineffective assistance of counsel by not advising him about relevant conduct, the Defendant fails to establish any prejudice from the alleged ineffectiveness because by his own words the Defendant pled guilty in spite of any predictions by attorney Campbell.

For all of these reasons, the Court will deny habeas relief on the Defendant's ground two claim.

### 3.    *Claim That Attorney Campbell Misadvised the Defendant about His Minimum Sentence*

In the first additional ground added in the Defendant's Memorandum of Law In Support, the Defendant states that attorney Campbell informed him "that his mandatory minimum sentence was ten years imprisonment when, in fact, it was five years imprisonment." (Mem. of

Law in Supp. 12, ECF No. 121.) The Defendant also discusses this claim in his Sworn Affidavit. He alleges that the Government failed to file the notice required by 28 U.S.C. § 851, and that his mandatory minimum sentence was therefore not increased to ten years. He also states that if he had been properly advised on this point, he would not have pled guilty. (Sworn Aff. 1, ECF No. 124.) The Government argues, first, that the Defendant has waived his right to bring this § 2255 claim. For reasons similar to those stated above, the Court disagrees with that analysis. The Defendant is alleging ineffective assistance of counsel with respect to an issue that could have affected the negotiation of the Plea Agreement. Accordingly, the Court will address this claim on the merits.

The Defendant's first additional ground for habeas relief fails on its merits because the Government did file the requisite notice under § 851. That section states as follows:

> No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon.

21 U.S.C. § 851(a)(1). As the Government notes, it filed an Information [ECF No. 66]  pursuant to 21 U.S.C. § 851(a)(1) on September 19, 2008. The Government filed its Information five days before the Defendant entered a plea of guilty in this matter. The Government notified the Defendant's attorney as required by § 851. Accordingly, the Defendant has failed to show any violation of § 851 in this case. Attorney Campbell's services were not unreasonable when he did not discuss this nonissue with the Defendant, and the Defendant could not have been prejudiced by the Government's compliance with this statutory provision. Because the Defendant's claim is simply incorrect and because his mandatory minimum sentence was ten years, the Court will

deny this first additional claim for habeas relief.

**4.      *Claim that Attorney Campbell was Ineffective for Not Informing the Defendant that his Prior Conviction for Possession of a Controlled Substance was Not a Proper Felony Drug Offense***

In the second additional ground added in his Memorandum of Law in Support, the Defendant claims that attorney Campbell provided ineffective assistance of counsel when he "failed to investigate [the Defendant's] prior criminal history and the relevant federal laws before advising [the Defendant] to enter a plea of guilty to the charged offenses." (Mem. of Law in Supp. 18.) The Defendant, citing *Lopez v. Gonzalez*, 549 U.S. 47 (2006), and *Burgess v. United States*, 553 U.S. 124 (2008), contends that he should not be subjected to enhanced penalties or an increased sentence for felony drug offenses punishable as felonies under state law but punishable only as misdemeanors under federal law. (*Id.* 21–25.) He reasons that—because his prior convictions were for possession of cocaine, a felony under state law but (he believes) only punishable as a misdemeanor under 21 U.S.C. § 844—the enhanced penalties do not apply.

The Government does not appear to argue that the Defendant's waiver forecloses this claim, and for the reasons discussed above the Court will address it on its merits. As to the claim itself, the Government notes that the Defendant has been convicted of two prior felony drug offenses in the Indiana State Court system. (Gov't Resp. to Sworn Aff. 4.) Title 21 U.S.C. § 844 makes it unlawful to possess a controlled substance. That section states that "[a]ny person who violates this subsection may be sentenced to a term of imprisonment of . . . not less than 15 days but not more than 2 years" if "he commits such offense after a prior conviction . . . for any drug, narcotic, or chemical offense chargeable under the law of any State, has become final."

Therefore, the Government argues, the Defendant's second state possession offense would be defined as a felony drug offense even under federal law and would trigger an increased sentence under § 841(a). The Government also argues that the Defendant misunderstands *Lopez*, as it interpreted the term "aggravated felony" rather than "felony drug offense." And although the Defendant attempts to use *Burgess* to bolster his claim, the Government argues that he misunderstands the holding in *Burgess*—that "all defendants whose prior drug crimes were punishable by more than one year in prison would be subject to" enhanced penalties under § 841. *Burgess*, 553 U.S. at 129.

The Court agrees with the Government that the Defendant has failed to show ineffective assistance of counsel with respect to his minimum sentence under § 841. The Defendant's argument depends on *Lopez*, in which the United States Supreme Court held that "conduct made a felony under state law but a misdemeanor under the Controlled Substances Act" is not a "felony punishable under the Controlled Substances Act" for the purposes of 18 U.S.C. § 924(c)(2). 549 U.S. at 50. *Lopez* was an immigration case, interpreting the meaning of the term "aggravated felony" in the Immigration and Nationality Act. The Defendant argues that, under the reasoning of *Lopez*, the Government cannot use his prior state felony possession convictions to enhance his sentence under § 841 of the Controlled Substances Act (CSA) because those state convictions would only be misdemeanors under the CSA. This argument fails as an initial matter because, as the Government notes, the Defendant has two previous state felony possession convictions. Under 21 U.S.C. § 844(a), the Defendant's second state possession offense would be punishable by up to 2 years of imprisonment, and thus his second state conviction would be a felony under the CSA. Therefore, even under the reasoning of *Lopez*, the Government correctly

enhanced the Defendant's minimum sentence under § 841 and attorney Campbell was not ineffective for failing to argue the contrary.

Further, the Court agrees with the Government that the Defendant's argument fails because of the United States Supreme Court's clear holding in *Burgess*. In that case, the Supreme Court held that § 802(44) provides the exclusive definition of the term felony drug offense as used in § 841. 553 U.S. at 129. The definition of "felony drug offense" given in § 802(44) for purposes of the CSA is as follows: "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances." Under the clear holding of *Burgess*, then, both of the Defendant's previous state felony possession offenses would trigger an enhanced sentence under § 841 because both of his previous convictions were punishable by imprisonment for more than one year. The Defendant's argument that an offense punishable as a felony under state law but which would be treated as a misdemeanor under the CSA cannot trigger a sentencing enhancement under § 841 is foreclosed by *Burgess*. *See Gray v. United States*, 341 F. App'x 193, 197–98 (7th Cir. 2009) (rejecting a *Lopez* sentencing argument under § 841 because of the Supreme Court's holding in *Burgess*); *Lucas v. United States*, No. 3:05-0760-MBS, 2009 WL 2588536, at *3 (D.S.C. Aug. 18, 2009) (rejecting the proposition that "unless a state offense is punishable as a federal felony[,] that state offense does not count as a felony for purposes of the CSA" because of the *Burgess* holding); *Heffington v. United States*, Nos. CV-96-5295 OWW, CR-F-93-5021 OWW, 2008 WL 2055417, at *4 (E.D. Cal. May 13, 2008) (denying a Rule 60(b) motion based on *Lopez* because of the *Burgess* holding).  Because attorney Campbell was not

unreasonable in failing to argue *Lopez* in the face of *Burgess*, and because the Defendant cannot show any prejudice from his attorney's failure to so argue, the Court will deny the Defendant's second additional claim raised in his Memorandum of Law in Support.

**5.      *Claim that Attorney Campbell was Ineffective for Advising the Defendant Incorrectly under U.S.S.G. § 1B1.2***

The Defendant raises one additional ground for habeas relief in his Sworn Affidavit. He alleges that:

> counsel advised that pursuant to United States Sentencing guidelines, section 1B1.2, should I agree that the crime I committed was more serious than that charged, I was to agree to this stipulation in writing. Since no such agreement/stipulation was entered into by me and the government, counsel advised that I could only be sentenced for the cocaine found in my automobile, and nothing more.

(Sworn Aff. 1, ECF No. 124.) The Government argues, first, that the Defendant has waived his right to bring this claim, but for the reasons discussed above, the Court disagrees. The Defendant is arguing that attorney Campbell misadvised him on an issue that could have affected his acceptance of the Plea Agreement including the waiver, a claim still available to the Defendant under *Jones*. Thus, the Court will address this final habeas claim on the merits.

The Defendant's claim that attorney Campbell misadvised him under U.S.S.G. § 1B1.2 fails for all the reasons previously articulated with respect to ground two of his § 2255 Motion. The Defendant's assertion that he was unaware of the possibility of being sentenced in part based on relevant conduct is inconsistent with his sworn testimony at the change of plea hearing and his statements in the Plea Agreement itself, so the Court may reject this argument. *See Peterson*, 414 F.3d at 827 ("a motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand unless the defendant has a compelling

29

explanation for the contradiction"). Further, although the Defendant has produced a Sworn Affidavit on this claim, he has not produced a "detailed and specific affidavit which shows that [he] had actual proof of the allegations going beyond mere unsupported assertions." *Galbraith*, 313 F.3d at 1009 (quotation marks omitted). Instead the Defendant has produced "merely bare allegations," and "cannot meet the threshold requirement for securing an evidentiary hearing." *Id.* The Defendant has not shown that attorney Campbell acted in bad faith when he allegedly misadvised the Defendant on this point, so he has failed to show objectively unreasonable assistance under the first prong of *Strickland*. *See Bridgeman*, 229 F.3d at 592 ("counsel's alleged miscalculation, standing alone, could never suffice to demonstrate deficient performance unless the inaccurate advice resulted from the attorney's failure to undertake a good-faith analysis of all of the relevant facts and applicable legal principles"). Moreover, the Defendant stated in many instances that he was aware his ultimate sentence could be different from any sentence predicted by his attorney, so he could not have been prejudiced by attorney Campbell's alleged erroneous advice. *See Bethel*, 458 F.3d at 718 (holding that a defendant "cannot now be heard to complain that he would not have pled guilty if he had known his sentence would be more severe than his lawyer predicted" where the defendant "specifically disclaimed that risk at his change of plea hearing"). For all these reasons, the Court will deny habeas relief on the final claim raised in the Defendant's Sworn Affidavit.

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings, the Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

30

A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Rule 11 of Rules Governing Section 2255 Proceedings. The substantial showing standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotation marks omitted); *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983). Where the district court has rejected the constitutional claims on procedural grounds, the court should issue a certificate of appealability "when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. Where the district court has rejected the constitutional claim on the merits, "the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id*. The defendant is not required to show that he will ultimately succeed on appeal. *Miller-El v. Cockrell*, 537 U.S. 322, 337, 342 (2003) (stating that the question is the "debatability of the underlying constitutional claim, not the resolution of that debate").

Rule 11(a) permits a district court to direct the parties to submit arguments on whether a certificate of appealability should issue. Additional argument is not necessary here, however, because no reasonable jurist could conclude that the Defendant did not knowingly and voluntarily plead guilty pursuant to a Plea Agreement that contained an express waiver of the right to collaterally attack his conviction or sentence. In addition, no reasonable jurist could

conclude that attorney Campbell rendered ineffective assistance in the negotiation of the Plea Agreement. The record indicates that the Defendant's plea was voluntary and that attorney Campbell acted reasonably in his representation and did not in any way prejudice the Defendant. As such, the Defendant cannot make the necessary showing that reasonable jurists would find the district court's assessment of the voluntariness of the plea or of counsel's performance debatable or wrong. Consequently, the Court will deny the Defendant a certificate of appealability as to the habeas claims raised in his § 2255 Motion, his Memorandum of Law in Support, and his Sworn Affidavit.

## CONCLUSION

For the foregoing reasons, the Court DENIES the Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [ECF No. 118], DENIES all additional claims for habeas relief contained in the Defendant's Memorandum of Law in Support [ECF No. 121] and Sworn Affidavit [ECF No. 124], and DENIES the Defendant a certificate of appealability.

SO ORDERED on August 7, 2013.

s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT